UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIRK D. HAIRE and REGINALD M. JONES,<br><br>Plaintiffs,<br><br>v.<br><br>SMITH, CURRIE & HANCOCK LLP,<br><br>Defendant. | Civil Action No.  12-749  (JDB) |

## MEMORANDUM OPINION

Dirk Haire and Reginald Jones (collectively "plaintiffs") initiated this action in the Superior Court of the District of Columbia against their former law firm, Smith Currie & Hancock, LLP ("Smith Currie" or "defendant"), alleging conversion and breach of contract claims.  They also seek declaratory relief that neither of them violated the Smith Currie Partnership Agreement; that the liquidated damages clause of the agreement is unenforceable as violative of public policy; and that the arbitration provision of the Partnership Agreement does not apply to their claims.  Haire also seeks a declaration that he is entitled to retain all the funds paid to him by Smith Currie prior to his withdrawal from the partnership.  Compl. ¶ 1.  Before the Court is Smith Currie's motion to dismiss or to stay and compel arbitration.  For the reasons discussed below, Smith Currie's motion to compel arbitration will be granted and the case will be dismissed.

## BACKGROUND

Smith Currie is an Atlanta-based law firm with several offices around the country,

1

including one in Washington, D.C. Id. ¶ 4, 8. Haire, an attorney who specializes in construction law, was an equity partner at Smith Currie from January 1, 2011 through August 31, 2011. He has been a partner with the law firm Fox Rothschild since September 1, 2011. Id. ¶ 2. Jones specializes in government contracts, and was an equity partner with Smith Currie from 2006 through August 31, 2011. He is also now a partner with Fox Rotshchild since September 1, 2011. Id. ¶ 3.

Smith Currie's Washington, D.C. office consisted of plaintiffs, one additional partner, five associates, and five staff members. Id. ¶ 8. In 2011, Haire and Jones grew concerned about the firm's financial condition and their levels of compensation compared to their contributions. They claimed that they were among the firm's top performers for hours billed and revenues collected, and that few of the firm's equity partners were on pace to bill the required hours. Plaintiffs repeatedly requested that the firm adjust its compensation plan to reflect their contributions to the firm's revenues and productivity, but these requests were rejected. Id. ¶¶ 13, 15-16. Hence, in August 2011, plaintiffs announced they would leave Smith Currie to join Fox Rothschild. Id. ¶ 16. Ultimately, Fox Rothschild hired the associates and staff members in Smith Currie's Washington, DC office and took over the lease from Smith Currie for the office space. Id. ¶ 19.

Smith Currie and plaintiffs had signed a Partnership Agreement, which governed their relationship. Id. ¶ 10. The Partnership Agreement sets forth the duties of partners, how distributions were made, and terms relating to changes in the partnership. It also contains an arbitration provision, which states the following in relevant part:

    (b)    *Arbitration*. Any dispute (not resolved by mediation) arising out of or relating to

> this Agreement, or any alleged breach hereof, or arising out of or relating to the Partners and the Partnership, shall be settled by voluntary arbitration conducted in Georgia.   Partnership Agreement Art. X § 10.2(b).

The arbitration provision also states that the arbitration "shall follow the Commercial Arbitration Rules of the AAA, as amended and in effect on the date a Demand for Arbitration is filed." Id.  It further provides that "[t]he arbitrator(s) shall be governed by and shall apply the substantive law of the State of Georgia in making its or their award." Id.

Plaintiffs claim that when they terminated their partnership, they were told that their capital contributions would be returned.  Compl. ¶17.  However, Smith Currie informed plaintiffs by letter that it would seek damages for their alleged breaches of the Partnership Agreement and for breach of fiduciary duty.  Id. ¶ 21.  Smith Currie also claimed that plaintiffs owed certain allocated amounts for fees associated with the Washington, DC office and that it could use plaintiffs' capital contributions to offset those obligations.  Id. It also sought return of $166,105 in "overpayments" that Haire had received as compensation.  Id. ¶ 22.

On April 18, 2012, plaintiffs filed this action in the Superior Court of the District of Columbia.  It was subsequently removed to this Court.  The complaint contains three counts. The first two counts allege conversion and breach of contract claims against Smith Currie, based on its alleged refusal to return plaintiffs' capital contributions and its demand that Haire return alleged "overpayments." Compl. ¶¶ 25-34.  Plaintiffs also seek a declaratory judgment that the arbitration provision is inapplicable to plaintiffs' claims; that they did not violate the Partnership Agreement; that they could keep any funds paid to them prior to their withdrawal from the partnership; and that the liquidated damages provision of the Partnership Agreement is void and unenforceable as contrary to public policy. Compl. ¶¶ 35-39.  Smith Currie has moved to dismiss

or to stay and compel arbitration. See Def.'s Mot. to Dismiss or to Stay and Compel Arb. [ECF 2] ("Def.'s Mot."). Plaintiffs oppose the motion, arguing that, as former partners, they ceased to be bound by the arbitration provision in the Partnership Agreement.[1]

## DISCUSSION

### I. Standard of Review

When considering a motion to compel arbitration, "the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions" pursuant to Federal Rule of Civil Procedure 56(c), "as if it were a request for summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc., 531 F.3d 863, 865 (D.C.Cir. 2008) (internal citation and quotation marks omitted); see also Brown v. Dorsey & Whitney, LLP, 267 F.Supp.2d 61, 67 (D.D.C. 2003). The party seeking to compel arbitration must "present 'evidence sufficient to demonstrate an enforceable agreement to arbitrate.'" Hill v. Wackenhut Servs. Int'l, 865 F. Supp. 2d 84, 89 (D.D.C. 2012) (quoting and citing SmartText Corp. v. Interland, Inc., 296 F. Supp. 2d 1257, 1263 (D. Kan. 2003)). The burden then shifts to plaintiffs

---

[1] Smith Currie's status report filed with this Court indicates that, while its motion was pending, a demand for arbitration was made with the American Arbitration Association ("AAA") on August 3, 2012, and an arbitrator was appointed on September 14, 2012. Status Report (Dec. 27, 2012) ¶¶ 1-2 [ECF 12]. In December 2012, the arbitrator made a preliminary ruling on arbitrability, finding that the arbitration provision bound plaintiffs, and that the disputes fell within the scope of the arbitration agreement. Ex. A to Status Report. Although an arbitrator's decision on arbitrability would be entitled to deference by this Court in reviewing an arbitration award, see First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 941-42 (1995); Schneider v. Kingdom of Thailand, 688 F.3d 68, 74 (2d Cir. 2012), here, there is no such award yet. Instead, what is before the Court is a threshold issue – that is, whether it is the Court or the arbitrator who should resolve arbitrability, see Davis v. Chevy Chase Fin. Ltd., 667 F.2d 160, 166-67 (D.C. Cir. 1981). That is an issue that the Court considers *de novo*. In any event, the parties have not sought review of the arbitrator's decision, nor has any party argued that it is entitled to deference at this time.

to show that there is a genuine issue of material fact as to the making of the agreement. Id. (internal citation and quotation marks omitted). "The Court will compel arbitration if the pleadings and the evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fox v. Computer World Servs. Corp., --- F. Supp. 2d ----, 2013 WL 385610, at *3 (D.D.C. 2013) (internal quotation marks and citation omitted).

## II.     Applicable Law

As an initial matter, it is not entirely clear what law applies.  There are three potential candidates: federal law, the law of the District of Columbia, and Georgia law.  Smith Currie maintains that this case is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"). Plaintiffs do not appear to dispute the application of the FAA, and indeed, rely on federal law in their briefs; however, they initially filed this action in the Superior Court of the District of Columbia, and they also rely on District of Columbia law.

The FAA is clearly relevant to this case.  Arbitration agreements relating to interstate commerce, regardless of whether the challenge is brought in state or federal court, are governed by the FAA. See Southland Corp. v. Keating, 465 U.S. 1, 10 (1984); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 447-48 (2006).  The FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 (1983).  To the extent there are conflicts between state arbitration law and the FAA that would contravene the pro-arbitration policies embodied in the FAA, the FAA applies and preempts such state laws. See Preston v. Ferrer, 552 U.S. 346, 360-63 (2008).

The "central purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 458 (2003) (internal citations and quotations omitted). The FAA states that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or the refusal to perform the whole or any part thereof, . . .  shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This section "declare[s] a national policy favoring arbitration of claims that parties contract to settle in that manner." Preston, 552 U.S. at 352 (citing Southland Corp., 465 U.S. at 10).  Any doubts regarding the scope of arbitrable issues should be resolved in favor of arbitration. Moses H. Cone, 460 U.S. at 24-25.  The FAA also provides for a court to stay its proceedings when an issue is referable to arbitration and for a party to apply for an order to compel arbitration as provided for in the arbitration agreement.  9 U.S.C. §§ 3-4.

Although the FAA applies, the issue of whether a matter should proceed to arbitration also relies on certain state law principles.  Here, the Court must decide the threshold question of "who has the primary power to decide arbitrability." See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995).  A court will only find that the parties agreed that an arbitrator would decide the issue if there is "clear and unmistakable evidence" of such an agreement.  See id.; see also Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002); AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986).  Whether "clear and unmistakable evidence" exists is determined by  principles of ordinary state-law contract formation.[2] First

---

[2] Both District of Columbia and Georgia law follow the "clear and unmistakable evidence" standard set forth by the Supreme Court in First Options.  See, e.g., Masurovsky v. Green, 687 A.2d 198, 204-05 (D.C. 1996); Galindo v. Lanier Worldwide, Inc., 526 S.E.2d 141, 145 (Ga. 1999).

Options, 514 U.S. at 944; Aliron Int'l, 531 F.3d at 865 (same).

Ultimately, whether the FAA, District of Columbia, or Georgia law governs the interpretation of the arbitration agreement is of no moment because District of Columbia and Georgia arbitration law rely on the FAA and incorporate the same presumptions in favor of arbitration. See, e.g., Giron v. Dodds, 35 A.3d 433, 436-37 (D.C. 2012); Bolton v. Bernabei & Katz, PLLC, 954 A.2d 953, 960 n.5 (D.C. 2008); Masurovsky, 687 A.2d at 204-05; 2200 M Street LLC v. Mackell, 940 A.2d 143, 151 (D.C. 2007); see also Order Homes, LLC v. Iverson, 685 S.E.2d 304, 307 (Ga. App. 2009) ("In enacting the [Georgia Arbitration Code], the General Assembly established 'a clear public policy' in favor of arbitration . . . . [B]ecause our state arbitration code closely tracks federal arbitration law, we look to federal cases for guidance in construing our own statutes.") (internal citations and quotations omitted).  Hence, even if District of Columbia or Georgia law applied, the analysis and outcome would likely be the same. See, e.g., Avue Techs. Corp. v. DCI Grp., L.L.C., No. 06-327, 2006 WL 1147662, at *4 (D.D.C. Apr. 28, 2006) (determining that Arizona law applied based on choice of law clause, but noting that "[w]hether the Court applies federal law, Arizona law, or the law of the District, the outcome of the case is the same").

Here, the Court will rely on federal law interpreting the FAA; however, given the Partnership Agreement's reliance on Georgia law, and the application of substantive Georgia law to the interpretation of its provisions, the Court will also consider Georgia law, as necessary. See Restatement (Second) of Conflict of Laws § 187; Avue, 2006 WL 1147662, at *4; see also Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001) ("Federal law establishes the enforceability of arbitration agreements, while state law governs the

interpretation and formation of such agreements.") (citing Perry v. Thomas, 482 U.S. 483 (1987)).

**III.    Arbitrability**

Within the framework and considerations stated above, the Court will now address the question of who should decide arbitrability – the arbitrator or the Court. See First Options, 514 U.S. at 943; Rent-A-Center, West, Inc. v. Jackson, 561 U.S. __, 130 S.Ct. 2772, 2783 (2010).  As previously stated, "whether the parties have submitted a particular dispute to arbitration . . . is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." Schneider v. Kingdom of Thailand, 688 F.3d 68, 71 (2d Cir. 2012) (citing and quoting Howsam, 537 U.S. at 79) (internal quotations and citations omitted).

The parties disagree on the answer to this question.  Smith Currie contends that the parties' incorporation of the AAA's Commercial Arbitration Rules into their arbitration agreement constituted "clear and unmistakable evidence" that the parties intended the question of arbitrability to be decided by an arbitrator.  Def.'s Mot. at 11.  Plaintiffs claim that because they contest the applicability of the arbitration agreement itself, it is the Court, not the arbitrator, who decides the threshold question of arbitrability. Pl.'s Opp'n at 6-9.  This distinction is more than a mere technical dispute.  If the parties intended for the arbitrator to decide the question of arbitrability, the court's inquiry ends there.  Terminix Int'l Co., LP v. Palmer Ranch Ltd., 432 F.3d 1327, 1333 (11th Cir. 2005) ("In the ordinary case, we would decide these questions only because they go to the validity of the arbitration clause itself, which is by default an issue for the court, not the arbitrator.  Here, however, the parties have contracted around that default rule, and it is, therefore, unnecessary for us to reach these issues.").

As a general matter, the Court agrees with plaintiffs that the question of arbitrability is usually for the Court to decide. See Granite Rock v. Int'l Brotherhood of Teamsters, 561 U.S. __, 130 S.Ct. 2847, 2856 (2010); see also John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-47 (1964). This is, in other words, the default rule. See, e.g.,Terminix, 432 F.3d at 1333. However, Rule R-7(a) of the AAA Commercial Arbitration Rules provides that: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." AAA Rules R-7(a).[3]

The Supreme Court has not conclusively resolved whether incorporation of the AAA rules constitutes clear and unmistakable evidence that the parties intended the question of arbitrability be answered by an arbitrator. But other courts have drawn this conclusion.[4] See, e.g., Terminix, 432 F.3d at 1332-33 ("By incorporating the AAA Rules . . . the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."); Contec Corp. v. Remote Solution, Co., 398 F.3d 205, 208 (2d Cir.2005) ("[W]hen . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."); Rep. of Ecuador v. Chevron Corp., 638 F. 3d 384, 394-95 (2d Cir. 2011) (citing Contec favorably and interpreting language in UNCITRAL Rules identical to AAA

---

[3] Am. Arbitration Ass'n, Commercial Arbitration Rules, *available at* http://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103&revision=latestreleased. Previous versions of Rule 7-A in effect at the time Jones and Haire allege that they first became equity partners (approximately 2006 and 2011 respectively) contain the same relevant language.

[4] Georgia law states that "[a]s a matter of contract law, incorporation by reference is generally effective to accomplish its intended purpose where the provision to which reference is made has a reasonably clear and ascertainable meaning." See Choate Constr. Co. v. Auto-Owners Ins. Co., 736 S.E.2d 443, 447 n.2 (Ga. App. 2012) (citing and quoting Goldman v. Vinson, 535 S.E.2d 305 (Ga. 2000)).

Rules); Awuah v. Coverall North Am., Inc., 554 F.3d 7, 10-12 (1st Cir. 2009) (incorporation of AAA Rules constitutes clear and unmistakable evidence that challenge to arbitration agreement based on unconscionability was intended to be heard by arbitrator, not court); Qualcomm v. Nokia Corp., 466 F.3d 1366, 1372-73 (Fed. Cir. 2006) (agreeing with the Second Circuit's analysis in Contec); Regal Lager, Inc. v. The Baby Club of Am., Inc., No. 06-cv-962, 2006 WL 3388435, at *3 (N.D. Ga. Nov. 21, 2006) (finding that arbitration agreement governed by Georgia law, but incorporating AAA rules, indicated that the parties intended for an arbitrator to determine whether arbitration clause was invalid for lack of mutuality).

A recent D.C. Circuit opinion strongly suggests that the D.C. Circuit would view incorporation of the AAA Rules as satisfying the requisite standard. See Rep. of Argentina v. BG Group PLC, 665 F.3d 1363, 1371 (D.C. Cir. 2012). The D.C. Circuit ultimately concluded that there was no clear and unmistakable evidence that the issue of arbitrability was intended for the arbitrator because the treaty signed by the parties explicitly allowed time for the parties to first seek relief in a court (rather than from an arbitrator). But the court noted that, if the UNCITRAL Rules were triggered, "the Treaty's incorporation of the UNCITRAL Rules" provided the requisite clear and unmistakable evidence that issues of arbitrability were intended for an arbitrator. Id. at 1371. Moreover, other courts in this jurisdiction, such as the undersigned, have also found that incorporation of the AAA rules satisfies the "clear and unmistakable" standard. See, e.g., Avue, 2006 WL 1147662, at * 3; Grynberg v. BP P.L.C., 585 F. Supp. 2d 50, 54 (D.D.C. 2008); Oehme. van Sweden & Assocs, Inc. v. Maypaul Trading & Servs., --- F. Supp. 2d ----, 2012 WL 5396394, at *6 (D.D.C. 2012) ("A signatory to a contract [incorporating the AAA Rules] has clearly and unmistakably agreed to its terms, but that is not necessarily true of a

nonsignatory.").[5]

In light of this caselaw, this Court concludes that there is clear and unmistakable evidence that the parties intended for an arbitrator to decide questions of arbitrability, including challenges to the continued validity and existence of the arbitration provision.  This case most resembles Contec Corp. v. Remote Solution Co., Ltd., 398 F.3d 205 (2d Cir. 2005).  There, the Second Circuit relied on the fact that both parties, and in particular the party opposing arbitration, were signatories to the arbitration agreement, which was "an important indicator of [a party's] expectation and intent when binding itself to the [ ] Agreement." Id. at 211.  Hence, that court concluded that "as a signatory to a contract containing an arbitration clause and incorporating by reference the AAA Rules, [a party] cannot now disown its agreed-to obligation to arbitrate *all* disputes, including the question of arbitrability." Id. (emphasis in original).

Likewise, plaintiffs here "do not contest the fact that they executed the Partnership Agreement". Pl.'s Opp'n at 8.  Instead, "they do contest whether an agreement to arbitrate exists between them – as Former Partners . . . and Smith Currie." Id.  Notably, plaintiffs do not claim that an arbitration agreement was never formed in the first instance.  And, they do not challenge the initial bargain to incorporate the AAA Rules into the arbitration agreement, including R7, which delegates responsibility to the arbitrator to decide questions of validity. See, e.g., Rent-A-Center, 130 S. Ct. at 2779-81 (distinguishing between challenges to an arbitration agreement as a whole and one focusing on the agreement's delegation provision).  Indeed, plaintiffs concede that

---

[5] Plaintiffs' attempt to distinguish this Court's decision in Grynberg is unavailing.  Plaintiffs claim that the dispute in Grynberg involved the scope of the arbitration agreement, while here they attack the continued validity of the agreement.  But because validity was not "seriously contested" by the parties, the Court found no reason in Grynberg to address the language in R-7 of the AAA Rules, which explicitly states that challenges to the existence or validity of the arbitration agreement would be heard by the arbitrator.

they signed the Partnership Agreement, including the arbitration provision, and that the arbitration agreement was valid as executed.  Instead, their argument now is that the arbitration agreement no longer applied to their claims once they terminated their partnership interest in the firm.  But, as in Contec, plaintiffs cannot now disavow their bargain to arbitrate all disputes arising under the contract, including the dispute over whether the concededly legitimate arbitration provision continued to control their claims.  Given the FAA's "liberal federal policy favoring arbitration agreements," Moses H. Cone, 460 U.S. at 24, and the parties' clear intent to have the question of arbitrability decided by an arbitrator, the motion to compel arbitration will be granted.

## CONCLUSION

The Court concludes that the parties intended the issue of arbitrability to be resolved by the arbitrator; all other claims brought by plaintiffs are essentially challenges to aspects of the Partnership Agreement and the partner relationship, which likewise belong with the arbitrator. Hence, the Court will grant Smith Currie's motion to compel arbitration and will dismiss this case. A separate order accompanies this memorandum opinion.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: February 28, 2013